# Delaware, Lackawanna and Western Railroad Company, Appellant, *v.* Monroe County Water Power and Supply Company.

*Contract—Performance—Construction of wall and fill—Railroad—Power company.*

A water power company being about to build a dam across a stream at a gorge, and being threatened with an injunction by a railroad company whose tracks were laid along the side of the gorge, entered into an agreement with the railroad company by which it undertook to build a retaining wall, and to fill in back of the wall as a protection to the embankment of the railroad company in accordance with certain plans and specifications required by the railroad. The power company built the wall, as required, but instead of making the fill itself, entered into a new contract with the railroad company by which the latter company agreed to make the fill. For this work the power company was to pay the railroad company a stated charge per cubic yard, but not for more than a specified number of yards. The work of filling by the railroad company was to be done in accordance with the specifications contained in the original agreement. In doing the work the railroad company departed from the specifications in not tamping the fill, and in not placing the fill as high up or against the retaining wall as the specifications required, but did the work to the satisfaction of the inspector and accepted it as complete performance of the undertaking of the power company to

protect the right of way and embankment of the railroad company. After the whole work was finished the railroad company accepted the wall and the fill as satisfactory. *Held,* that the railroad company was entitled to recover from the power company the cost of the fill up to the maximum number of cubic yards specified in the supplemental agreement.

· BROWN, MESTREZAT and POTTER, JJ., dissent.

Argued March 9, 1908. Appeal, No. 363, Jan. T., 1907, by plaintiff, from judgment of C. P. Monroe Co., Feb. T., 1907, No. 17, on verdict for defendant in case of the Delaware, Lackawanna and Western Railroad Company v. Monroe County Water Power and Supply Company, and Van C. Peters and W. S. Shafer. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit to recover money alleged to be due on a contract for filling in back of a retaining wall. Before STAPLES, J.

The facts are stated in the opinion and the dissenting opinion of the Supreme Court.

At the trial the court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*A. Mitchell Palmer,* for appellant.

*C. C. Shull,* of *Shull & Shull,* for appellee.

OPINION BY MR. JUSTICE ELKIN, May 18, 1908 :

The appellee, an incorporated power company, was about to build a dam across a stream which ran through lands owned by it upon which a power plant was to be constructed. The stream at this point runs through a deep gorge, and alongside of it is the right of way of appellant railroad company. It was apparent to all interested parties that the construction of

the dam would necessarily cause the water to back flow upon the right of way of the railroad company which skirted the base of the mountain at this point, and do injury to its embankment, which extended down almost to the water line. In order to protect its property from threatened injury the railroad company was about to institute proceedings to restrain the power company from obstructing the stream in such manner as to do injury to its right of way by causing the back flow of water. At this juncture the two companies got together amicably, and entered into an agreement whereby the controversy between them was settled without resort to a restraining order. Under the terms of this agreement the power company was required to build a solid concrete retaining wall alongside of and between the creek and the right of way of the railroad company, and to fill in with earth backing the space between the wall and the embankment, in accordance with the specifications and requirements of the railroad company. The power company complied with its agreement to build the retaining wall, but, finding it inconvenient, and perhaps expensive, not having easy access to the place where the fill was to be made, or to materials with which to make it, concluded to make an arrangement with the railroad company to furnish the materials and do the work necessary to make the fill as required by the railroad company. This agreement is dated October 31, 1905, and refers to the former agreement whereby the power company had undertaken to construct the retaining wall and make the earth fill, and in express terms covenanted to pay the railroad company the sum of forty cents per cubic yard for furnishing the materials and doing the work necessary to make the fill and complete the undertaking of the power company. The engineer of the railroad company had estimated that 8,930 cubic yards would make the fill, and the contract limited the liability of the power company to this amount. The railroad company, as shown by the testimony, completed the fill to its own satisfaction, caused 10,780 cubic yards of earth to be put in the fill, and then demanded payment from the power company, claiming $3,572, the maximum liability under the contract. The power company refused payment, and this suit was brought to enforce it. It was successfully contended in the court below that

there could be no recovery of any amount whatever on the contract, because the railroad company had not strictly complied with the original specifications and requirements provided therein for making the fill. The learned court below, at the conclusion of the plaintiff's testimony, directed the jury to return a verdict for defendant on the ground that there can be no recovery for part performance of an entire contract, or where there has been failure to complete according to the terms thereof. It was held that inasmuch as the testimony showed that the fill had not been tamped in, and had not been placed as high up on the retaining wall as the specifications required, there was not a substantial compliance with the provisions of the contract, and the right of recovery was thus defeated. We agree with the contention of the learned counsel for appellant that this position fails to take into consideration the true relation of the parties to this contract and the rights and duties of each thereunder. This position would seem to assume that the power company is the owner, and the railroad company the contractor, when, in the legal sense, under the facts of this case, the railroad company is the owner and the power company the contractor. It is true the railroad company did perform the work, but it did so in the capacity of a subcontractor of the power company, which in the first instance undertook to do the work and subsequently arranged with the railroad company to do it, and agreed to pay a certain amount when completed. It may be conceded that where an owner enters into a contract with a contractor for the construction of a building, or other improvement, to be erected according to plans and specifications agreed upon, which construction is under the supervision of an architect, who has authority to pass upon the kind and quality of materials used, and the character of work done, and who is authorized to determine disputes between the owner and contractor, substantial compliance with the plans and specifications must be shown, and, when required, a certificate from the architect showing completion must be produced before there can be a recovery. But this rule can have no application to the present case because the owner here, the railroad company, is not raising any question about the character of work done, or the quality of materials used, or that there is any dispute concern-

ing the work between the parties, and concedes that there has been substantial compliance with the requirements of the contract. The railroad company concedes that the work was done to its entire satisfaction under the direction of an inspector, its own employee, authorized by the terms of the contract to pass upon and approve the work. Under these circumstances, it is not within the legal rights of the power company to say the railroad company demanded the work to be done in a certain way for its protection, our company agreed to do it in that way, but it not being convenient for our company to do the work, we agreed to pay your company for doing it according to its own specifications and requirements, and now that your company has done the work to its own satisfaction, our company will not pay for doing it, as it agreed to do, because your company made some changes in the method of doing the work required in the original specifications. It cannot be doubted, if the power company had performed the work itself instead of employing the railroad company to do it, and while doing the work the railroad company had suggested the changes made, and the power company, acting on these suggestions, had done the work in precisely the same manner as the railroad company did it, that there would have been substantial performance by the power company, and it would be relieved from further liability thereunder. When the work was done to the satisfaction of the railroad company, the party at whose instance aud for whose protection it was done, and accepted by it in full compliance with the contractual obligation of the power company, there was substantial performance of the contract and the right to recover attached. This would be true between the owner and contractor even in a building contract, as, for instance, suppose the owner had the right under the contract to insist upon the contractor completing the building according to plans and specifications, and in point of fact it was not so completed, but being satisfied with the building as completed the owner accepted it as a substantial performance of the contract, surely, in such a case, it could not be successfully contended, that there could be no recovery on the ground of failure to complete according to plans and specifications. It does not appear in the pleadings, or in the evidence produced at the trial, or in the argument of counsel here,

that the retaining wall and the earth fill were constructed for any purpose connected with the business for which the power company was incorporated, but the whole record shows and the parties themselves concede that this construction was intended as a protection to the embankment and right of way of the railroad company. The earth fill, the subject-matter of this controversy, was not even located on the property of the power company. From the beginning of the negotiations between the parties every step taken indicates the sole purpose of the contracting parties to be the protection of the embankment and right of way of the railroad company. Protection from the back flow of water is what the railroad company demanded and what the power company agreed to give. When, therefore, the railroad company which demanded this protection to its property and specified the kind of construction that would satisfy its demand, accepted the wall and fill as complete performance of the undertaking of the power company, how can the power company either in equity or in law deny its responsibility to pay what it agreed to pay by alleging that the work was not done according to the specifications and requirements of the railroad company?

Again, the power company is not injured by the changes made by the railroad company in the method of making the fill. No additional financial burden is imposed at present and there can be no increased liability in the future. If at any time the construction should prove to be inadequate for the protection intended to be secured, and the embankment should give way at this point, and the railroad company should attempt to recover damages from the power company, or should undertake to compel additional protection, it would be a complete answer for the power company to say that the railroad company had taken the responsibility of changing the requirements of the construction intended for its protection, and had accepted the wall and fill as complete performance of the undertaking of the power company, and if this protection is inadequate, the fault is that of the railroad company, and not of the power company, and the railroad company is precluded by its own acts from claiming damages or demanding additional protection.

Judgment reversed and a venire facias de novo awarded.

MR. JUSTICE BROWN, dissenting :

It seems to me to be impossible to reach the conclusion that the court below erred in this case, unless such conclusion is the result of a misapprehension of the undisputed facts. I shall state them as they appear in the documentary evidence and from the brief testimony of the only witness examined by the plaintiff.

It was discovered that the construction of a dam by the appellee would back the waters of a stream over on the property of the appellant. Instead of a resort to the courts to prevent this trespass the appellant and appellee agreed in writing that the latter should build a retaining wall along the creek between it and the former's right of way. It was agreed not only that this wall should be built, but that the appellee would place against it as a support a bank of earth to " be deposited in layers and well tamped," and to extend, according to the testimony, to within five feet from the top of the wall. This tamped supporting earth was not to extend to the embankment of the railroad company, but there was to be a space between them at the foot of the support. That there may be no mistake as to this feature of the case, I quote from the appellant's paper-book the words of its counsel : " A blue print accompanying the specifications showed the proposed fill against the wall and thence running down to a point near the foot of the railroad . company's embankment." An inspector, to be appointed by the railroad company and paid by the power company, was to see that the material and workmanship in the construction of the wall and the placing of the support against it should conform to⁻ the specifications ; and such variations of sizes and dimensions from those shown on the drawings or plans as might be required by the emergencies of the construction and the development of the work were in all cases to be determined by said inspector. The solid concrete retaining wall, a little more than 2,000 feet in length, was built by the appellee, and of it the appellant makes no complaint. The appellee, instead of putting the support against the wall, made an agreement on October 31, 1905, with the railroad company that it should do that work. The agreement provided not merely that the work should be done as required by the railroad company, but " in accordance with

the specifications " contained in the original agreement. For this work, which the appellant agreed to do for the appellee, the latter agreed to pay, not a fixed sum, but at the rate of forty cents per cubic yard " for the number of yards actually contained within the said fill," provided that it should not be liable in any event to pay for more than 8,930 yards. The following is the stipulation as to the extent of its liability : " If, however, when the said materials shall be furnished and the work performed, the same shall measure less than the number of yards mentioned, the said power company shall only be liable for the number of yards actually contained within the said fill."

The appellant claims that it is entitled to recover from the appellee $3,572, the maximum sum named in the agreement for placing the support against the wall. Let us turn to the testimony showing exactly what the appellant did, for this ought to be done in determining what, if anything, it is entitled to under the agreement, upon which it bases its right to recover.

Martin Gill, the only witness who testified in the case, stated that 10,780 cubic yards of earth had been dumped from the cars on the tracks at the top of the embankment forty feet from the wall down over the embankment with such force that some of it ran down against the wall. His testimony was as follows : " Q. It was not tamped ? A. No, sir. Q. It was just one load dumped in on top of the other and shoveled down the bank ? A. Shoveled down the bank and plowed down with scrapers. Q. Are there a number of places along that wall where it is ten feet and over from the top of the wall to the dirt ? A. I should judge there was." When asked who instructed him how to do the work, his answer was that his instructions came from A. J. Neafie, the principal assistant engineer of the company. What the instructions were and what the witness did appear from the following extract from his testimony : " Q. Did he instruct you how it was to be filled ? A. Not any more than to strengthen our bank. Q. Were you instructed to take care of the wall in any way, fill it, to back up the wall ? A. Only to let it run down against the wall as it would come out of the cars and to make room with the men shoveling it in, until we got in our 8,930

yards. Q. You had no instructions to place an earth backing against this wall in accordance with certain requirements? A. No, sir. Q. It was simply to fill it in from the standpoint of protecting your bank, or protecting the railroad bank? A. Yes, sir." Here is affirmative proof by the plaintiff itself that it not only had not done that which it had agreed to do for the defendant, and for which the defendant had agreed to pay, but had done that which the defendant had never at any time been requested to do and had not agreed to do in the agreement of October 31, 1905. What the appellant required was that its land be protected from the backing of the waters of the stream upon it after the erection of the dam, and if the wall with its earth support, which the appellee agreed to erect to keep the waters out, was sufficient for that purpose, the land could not be flooded. Strengthening the embankment, the top of which was forty feet away from the wall, would not strengthen the wall or make it any more water-tight. Besides, the appellee never agreed, and it is not pretended that it did, to deposit earth in layers and tamp it " from the standpoint of protecting " appellant's embankment. The wall alone was to be strengthened by it. The purpose of the wall was to protect the embankment and the intervening space from the waters of the stream, and all the power company ever agreed to do, or was ever asked to do, was to protect the embankment by the construction of the wall with proper support. But now it is asked to pay for strengthening the embankment, which needs to be strengthened only to give better support for the tracks of the railroad company, and for this the railroad company alone should pay. How much of the earth dumped down over the embankment reached the wall does not appear. It may have been but a few hundred cubic yards, and it certainly could not have been the maximum of 8,930 yards, for Gill admits that at but a single point, a " key," as he terms it, did the earth extend up to within five feet of the top of the wall, and at a number of places it was ten feet below.

One of the contentions of appellant's counsel is that even if the embankment, and not the wall, was strengthened, the change was made by the authorized inspector of the company. This may be very briefly answered. An inspector appointed

by the company could not change the contract nor the character of the work to be done under it. His power was limited to varying the sizes and dimensions from those shown on the drawings or plan, when such variations might " be required by the emergencies of the construction and the development of the work." He could not change a contract for the strengthening of the wall into one for strengthening an embankment which the appellee was under no duty to strengthen and which needed no strengthening as against the waters of the stream, if the wall was itself strong enough to keep them out. But even if an inspector could have done what is alleged was done here, no inspector was ever appointed by the company, and counsel for appellant very well knew this when he asked Gill the following question : " Q. Who was the inspector, if you might call him such, in charge of the filling in, seeing that the fill was done according to the requirements of the railroad company ? A. I was." A moment before this witness had testified that he was merely a division roadmaster of the appellant company.

As the defendant was not called upon to make any defense, we are unable to say whether the assumption that the appellee has not been injured by the changes is correct or not, but, if an averment in the affidavit of defense, offered in evidence by the plaintiff, be true, it unquestionably has been injured. That averment is : " The defendants allege that the labor performed in filling in the said space by the said plaintiff was not done in accordance with the plans, specifications and requirements, but was done in such careless and negligent manner that it turns the surface water, running from the embankment and roadbed of the said plaintiff, against the said retaining wall, and that the said water flowed along the said retaining wall into and under the power house of the said Monroe County Water Power and Supply Company, thereby putting the machinery and belts under water and washing out and carrying away an embankment and a fill placed back of the power house of said defendant and along said retaining wall, to the great damage of the said defendant." When the appellee agreed to pay for the support to be given to the wall, and which it would have given to the same if it had done the work itself, it might very naturally have had in mind protection to itself from what it complains of in its affidavit of de-

fense; and if the support which was to be given to the wall by the appellant under its contract had been given, the surface water running from the embankment and roadbed of the railroad company could not flow along the retaining wall and into and under the power house of the appellee.

Again, it is urged, and with apparent sincerity, that when the railroad company agreed to put the earth support against the wall, it became a subcontractor for the appellee, and as it, in its dual capacity as owner of the property to be protected, is satisfied with the work which it itself did in its other capacity as subcontractor, it is none of the appellee's business how the work was done, and it must, therefore, pay. This is a process of reasoning I am not able to follow. It logically means that if but one cubic yard of earth reached the wall and the remaining 10,779 yards were put upon the embankment as a support to it, the appellee must pay, if the appellant is satisfied to do without the support against the wall, and yet that support is all the appellee agreed to pay for. I have always understood that when a contractor for the erection of a building makes a contract with someone else for a portion of the work to be done, the subcontractor can recover from the contractor only for the work done under the subcontract, and only such sum as the contractor agrees to pay for work actually done; and if the owner of the property upon which a building is erected happens to become a subcontractor under his contractor, his rights as against the contractor are no higher than those of a stranger. No change of plans made by the owner with a subcontractor can affect the right of the contractor to recover from the owner his full contract price to be paid for the erection of the building, unless the changes are made with his consent. The power company did not agree to pay the railroad company any sum, much less a fixed one, to be relieved from any duty. Its agreement was to pay the railroad company for performing a duty for it, not, however, to exceed a certain sum, and as much less as the quantity of earth actually contained in the fill might be less than the estimate made by the railroad company of the amount that would be required. The duty which the power company was to perform was not performed by the railroad company, though that company agreed to perform it for a consideration. That consideration

was not to exceed $3,572, and this maximum sum is now demanded of the appellee for being relieved from the duty. It never agreed to pay anything for such relief; its agreement was to pay for something to be actually done. What the railroad company contracted it would do it has admittedly not done, but has done something which it was never the appellee's duty to do, which it had never contracted to do and which it never authorized the railroad company to do for it. That company sues on a contract in writing, but cannot turn to a word in it that says the appellee must pay for what has been done. The learned trial judge, in his opinion overruling the motion for a new trial, unanswerably said : "The material was dumped out of the cars of the plaintiff company right along by its track, and was dumped with such force that some of it ran down against the wall; but the filling was not piled against the wall to the height and depth as shown on the plans, admitted in evidence, and the filling was not deposited in layers and well tamped. While the agreement was that the filling should at all places be within five feet from the top of the wall, there were some places where it was ten feet and over from the top of the wall to the dirt, and no place where the dirt was within five feet of the top of the wall. The dirt was merely dumped from the cars and shoveled down the bank and plowed down with scrapers. In short, the plaintiff company failed to do the work as provided for in the specifications and plans, nor was there even any substantial compliance with the same."

In remanding the case for another trial the majority of my brethren do not seem to decide what the appellant may be permitted to recover. The agreement says the appellee " shall only be liable for the number of yards actually contained within the said fill." Is the appellant to recover more? What it did was not to support the wall with a fill, but " to strengthen" the embankment, is the testimony of Gill. If the wall was sufficient without the support, as appellant seems to have thought it was, to keep the waters from its land, the embankment needed no strengthening as against the waters, and, therefore if appellee is to pay, it must pay for work which the appellant would have been required to do, assuming that its bank needed strengthening, if the dam had not been erected.

The situation being just what I have stated it to be, the judgment clearly ought to be affirmed.

MESTREZAT and POTTER, JJ., concur in this dissent.